NOT DESIGNATED FOR PUBLICATION

No. 127,032

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANDUNN D. RICHARDSON,
*Appellant.*


MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Oral argument held April 14, 2026. Opinion filed July 31, 2026. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., MALONE and ATCHESON, JJ.


GARDNER, J.: A jury found Landunn D. Richardson guilty of reckless second-degree murder and driving on a suspended license after he was involved in a fatal car crash. Richardson appeals his murder conviction and sentence, challenging the admission of prior crimes evidence, law enforcement's handling of evidence, and the basis for his departure sentence. After carefully reviewing the record, we find no error and affirm.

1

FACTS

On a Friday evening in August 2016, Richardson was driving a 1994 GMC Sierra truck southbound on I-635 when he suddenly lost control of the truck. According to Richardson, he heard a loud pop and then immediately lost the ability to brake and steer. The truck then swerved across the interstate, through the median, and into oncoming traffic where it crashed into Vickie Taylor's SUV, causing it to flip off the road. Taylor was fatally injured and died within minutes.

Chad Hodge, an officer with the Mission Police Department, responded to the crash. When he arrived, he saw Richardson's truck stopped on the right lane of the northbound side of the interstate, with "heavy, disabling, front-end damage." Taylor's SUV was lying on its side in an embankment by the road, extensively damaged. Taylor was seriously injured and nonresponsive.

Richardson was trapped in his truck but semi-conscious when Hodge arrived. Hodge learned that Richardson's license was suspended. Richardson was dazed but Hodge did not think that Richardson was under the influence of any substances. He instead assumed that Richardson had been knocked around during the crash. Hodge did not smell or see any alcohol or other items consistent with substance use when he approached Richardson's truck.

Hodge collected statements from several witnesses at the scene. In short, these witnesses said that Richardson's southbound truck veered suddenly and at a high speed into the grassy median, struck an embankment, went partially airborne, and then struck Taylor's northbound SUV on the other side of the highway. Taylor's SUV rolled off the roadway, and both drivers were left trapped inside their vehicles.

Connie and John Osborne went to Richardson's aide. Richardson was motionless, bleeding, and had glassy eyes. John had experience training mixed martial arts fighters and believed that Richardson acted consistent with someone who had been knocked out from a violent hit. John did not see, smell, or notice anything consistent with any drug or alcohol use.

Paramedics arrived at the scene, and Angela Thompson treated Richardson. Thompson noted swelling, bruising, and an abrasion around Richardson's eye socket. She also noted several other factors consistent with someone who had suffered a concussion. Thompson did not notice any signs that Richardson was impaired by drugs or alcohol at the time but asked if he had consumed anything. Richardson responded that he had drunk a beer at around noon that day.

*Hospitalization and Drug and Alcohol Testing*

The paramedics transported Richardson to the University of Kansas Medical Center. An Overland Park police officer, Lawrence Franklin, followed Richardson there. Franklin did not draw Richardson's blood or conduct any sobriety tests. Throughout his interaction with Richardson, Franklin did not smell any alcohol or notice blood shot eyes, slurred speech, or other indicators of drug or alcohol use.

Medical staff later collected and tested blood and urine samples as part of Richardson's treatment. Investigators subpoenaed the results of these tests, which showed Richardson had a blood alcohol concentration of 0.031 grams per deciliter. Richardson also tested positive for use of cocaine and phencyclidine (PCP), but the tests did not provide a specific amount of cocaine or PCP in Richardson's system. A forensic toxicologist, Carrie Hodges, later explained that cocaine and PCP can be detected in a person's system for up to three days after use.

*Additional Investigation into Possible Inebriation and Mechanical Malfunctions*

A few days after the accident, another officer, Dennis Davis, went to the hospital to talk to Richardson and his wife, Anita Hall. Richardson told Davis that on the day of the accident, he had heard a pop and then lost control of his brakes and steering. According to Hall, Richardson had similarly told her that one of the truck's tires had blown just before the accident. Richardson claimed that he was not speeding and denied using any drugs or alcohol on the day of the crash, but he admitted that his license was suspended.

Davis interviewed Hall again in April 2017, about 7 and a half months after the crash. Hall explained that she and Richardson had been married for about 12 years but were getting divorced. Hall testified that Richardson had been sober for two weeks before the accident. Yet she also reported that Richardson used cocaine regularly and PCP daily. Richardson had been with his cousin on the day of the crash, and they had a history of getting high together. When Richardson called Hall at around 7 p.m. the evening of the crash, Hall believed that Richardson sounded high. Hall would later testify that she may have told Davis this because she was angry with Richardson at the time, yet she never stated that the information was false. Hall later testified that she had spoken with a psychiatrist the day after Richardson's crash to discuss concerns she had about his drug use.

About 10 months after the crash, Davis contacted Richardson again and confronted him about the results of his toxicology tests. Richardson maintained that he had not used any drugs the day of the crash or during the preceding 30 days. Davis also asked Richardson about his prior conversation with a psychiatrist, in which Richardson had admitted drinking two to three beers daily and using cocaine and PCP daily for five years. Richardson responded that he did not remember making those statements.

*Vehicle Inspection*

Immediately after the crash, law enforcement placed a hold on Richardson's truck, then Officer Nicholas Canaan applied for a search warrant. Davis had spoken with Richardson in the hospital and had heard Richardson's account of hearing a pop before the accident, followed by loss of control of his brakes and steering. Law enforcement recruited Wesley Clark, a retired police officer who had experience performing the type of "vehicle autopsy" needed, to inspect Richardson's truck for possible mechanical malfunctioning. Clark determined that the brakes were still in good working condition and had not caused or contributed to the crash. He also found that the truck's tie rod was broken, but the tie rod's bolt had been "she[a]red off," indicating that this break had occurred as a result of the crash rather than caused the crash.

The day after Clark completed his inspection, the State released its hold on the truck and allowed Dale's Tow to retrieve it. Davis learned that Richardson's cousin, Kenton Dean, was listed on the title as the truck's registered owner. Per department policy, Davis contacted Dean, the registered owner, after the inspection was done. Dean told Davis that he had sold the truck to Richardson, but Richardson had not completed payment, so Dean had kept the truck registered in his name. Davis told Dean the truck was at Dale's Tow and suggested that he contact his insurance company. Dale's Tow sold the truck two months after retrieving it, and the truck was crushed around three months after it was sold. Davis did not contact Richardson to tell him that the police hold on the truck had been released.

*Pretrial Motions and Proceedings*

The State charged Richardson with alternative counts of second-degree reckless murder and involuntary manslaughter while driving under the influence (DUI). The State also charged Richardson with driving on a suspended license. Before trial, the State filed

a notice of intent to seek an upward durational departure at sentencing based on two aggravating factors: (1) future dangerousness; and (2) non-amenability to probation.

The State also filed a pretrial notice of intent to present prior crimes evidence, seeking to admit evidence of Richardson's prior DUI convictions in 2014 and 2015. Richardson objected, arguing the evidence was overly prejudicial. The district court rejected his argument and found the evidence relevant to prove a disputed material fact— whether Richardson had acted recklessly.

Richardson later moved to dismiss, acting pro se, arguing the State had failed to preserve evidence central to his defense (the truck) in violation of due process requirements. Defense counsel then filed an amended motion, moving to dismiss the criminal charge or suppress the evidence obtained from Clark's investigation. Richardson argued that the State violated his right to due process by releasing the truck before he could conduct his own investigation. He also claimed that the police acted in bad faith by releasing the truck, effectively destroying evidence he could have obtained.

The district court held an evidentiary hearing on the motion. The State presented testimony from three witnesses, including Davis. Richardson appeared pro se but presented extensive arguments and cross-examined each witness. Still, the district court denied Richardson's motion, finding law enforcement had not acted in bad faith.

*Trial and Verdict*

At trial, the State presented testimony from several witnesses in its case-in-chief, including seven eyewitnesses, emergency responders, and Hodges, Davis, Canaan, Clark, and Hall. The State also submitted several pictures of the crash, Richardson's toxicology report, and documents showing Richardson's license suspension. The State also presented evidence of Richardson's prior DUIs. To avoid presentation of the actual journal entries

6

of judgment, Richardson agreed to the following stipulation, which the prosecutor read to the jury: "Richardson . . . has a prior conviction for driving under the influence of alcohol which occurred in 2014 . . . [and] . . . a prior conviction for operating a vehicle while intoxicated which occurred in 2015." Over Richardson's objection, the district court also incorporated that stipulation into a jury instruction.

Richardson was represented by counsel at trial, but Richardson neither testified nor called any witnesses. After the State rested, he moved for a judgment of acquittal, which the district court denied. Richardson conceded that he was driving while suspended but argued the evidence did not prove reckless disregard for human life or a DUI.

The district court instructed the jury on the alternative offenses of reckless second-degree murder and involuntary manslaughter while DUI, and the lesser included offenses of involuntary manslaughter and simple DUI. The jury found Richardson guilty of reckless second-degree murder and driving while suspended but acquitted him of involuntary manslaughter while DUI and its lesser included offenses.

*Sentencing Proceedings*

A sentencing departure proceeding began right after the jury rendered its verdict. The State argued two aggravating circumstances justified an upward departure: (1) Richardson presented a risk of future danger to the public; and (2) Richardson was not amenable to probation. To prove those circumstances, the State presented two witnesses.

Phillip Salmon, a former Missouri police officer, testified that he had pulled Richardson over on August 21, 2016, five days before the collision with Taylor. Salmon explained that he stopped Richardson after witnessing several traffic infractions. After he approached Richardson, Salmon noticed Richardson's eyes were bloodshot and glassy

7

and he appeared somewhat confused. After conducting some standardized field sobriety tests, Salmon determined that Richardson was possibly intoxicated by alcohol and marijuana. Richardson agreed to a breath test, which showed a BAC of 0.062. Salmon arrested Richardson and issued him citations for failing to maintain a single lane, failing to signal a turn, driving while suspended, having no proof of insurance, and driving while intoxicated. The citation for driving while intoxicated was later amended to careless and imprudent driving.

Michael Boczek, a Kansas City police officer, testified about another crash that Richardson was in about five months before the crash in this case. Boczek explained that Richardson's truck had slid across four lanes of traffic and crashed into a ditch after failing to negotiate a curve. When Boczek arrived at the scene, he noted a heavy chemical odor coming from Richardson that Boczek knew was PCP, but he did not find any PCP or drug paraphernalia in Richardson's vehicle after the crash. Boczek did not know if Richardson faced criminal charges based on this incident.

During closing arguments, the State recalled from the parties' stipulation that in addition to the evidence presented by the witnesses, Richardson had been convicted of another DUI in 2014. The State explained that Richardson had been placed on probation for that conviction, but his probation was later revoked and reinstated for an additional 12 months. While Richardson was still serving this 12-month probation, he caused the crash in this case. The State argued that this evidence proved Richardson posed a risk of danger and was not amenable to probation.

The jury agreed and unanimously found both aggravating circumstances beyond a reasonable doubt. The district court found the aggravating circumstances provided substantial and compelling reasons to depart upward from the presumptive sentences. So although Richardson's primary offense carried a presumptive term of 184 months'

8

imprisonment, the district court imposed an additional 72 months and sentenced Richardson to a controlling term of 256 months in prison.

Richardson timely appeals.

ANALYSIS

I. *Did the District Court Err by Admitting Evidence of Richardson's Prior DUIs?*

Richardson first argues that the district court erred by admitting evidence of his 2014 and 2015 DUI convictions at trial. He challenges the district court's admission of the stipulation during the State's case-in-chief and its inclusion of the stipulation in the jury instructions. Richardson claims the district court violated K.S.A. 60-455 because the evidence was substantially more prejudicial than probative. The district court found that under *State v. Doub*, 32 Kan. App. 2d 1087, 1092, 95 P.3d 116 (2004), Richardson's driving record was relevant to determine whether he had acted recklessly. The district court also found the evidence of his prior DUIs was not more prejudicial than probative and thus denied Richardson's argument.

*Standard of Review and Basic Legal Principles*

K.S.A. 60-455 governs the admission of evidence of prior crimes or bad acts. It provides that "evidence that a person committed a crime . . . on a specified occasion, is inadmissible to prove such person's disposition to commit crime . . . as the basis for an inference that the person committed another crime . . . on another specified occasion." K.S.A. 60-455(a). The use of propensity evidence is generally prohibited under the statute because prior crimes evidence may cause a jury to conclude that the defendant is a general wrongdoer who should not be believed. See *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006).

9

But evidence that a defendant committed a different crime or civil wrong may be admissible for reasons other than propensity. So when evidence is relevant to prove some other material fact relating to the crime charged, such as "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," it may be admitted. K.S.A. 60-455(b). When such evidence is admitted, the district court must instruct the jury about the specific purpose of the evidence and how it can and cannot be considered. See *State v. Evans*, 313 Kan. 972, 987, 492 P.3d 418 (2021). The district court did so here, instructing that the evidence was limited to establishing whether Richardson acted with extreme indifference to the value of human life.

Courts conduct a three-step analysis to determine the admissibility of prior bad acts evidence. See *State v. Brazzle*, 311 Kan. 754, 758-59, 466 P.3d 1195 (2020). First, the district court considers whether the fact to be proven is material—whether it has some real bearing on the decision in the case. This determination is subject to de novo review on appeal. Second, the district court must determine whether the material fact is disputed and whether the evidence has any tendency in reason to prove the disputed material fact. Third, the court must consider "whether the risk of undue prejudice substantially outweighs the evidence's probative value." 311 Kan. at 759. We review determinations under the second and third steps for an abuse of discretion. *State v. Claerhout*, 310 Kan. 924, 927-28, 453 P.3d 855 (2019).

Richardson does not challenge the first two steps. He tacitly concedes that the evidence of his prior DUIs is relevant to establish a material fact at issue—his state of mind or recklessness, and he similarly concedes that his intent is disputed and that evidence of his prior DUIs is relevant to prove his state of mind. Richardson challenges solely the district court's application of the third factor. He thus bears the burden to show that the district court abused its discretion by not finding that the risk of undue prejudice from admitting his prior DUI convictions substantially outweighed that evidence's probative value. See *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024) (the

10

party asserting the district court abused its discretion bears the burden to show such error). Judicial discretion is abused if the court's action is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). Richardson argues no error of fact or law and thus rests his claim on unreasonableness. "A district court abuses its discretion if no reasonable person could agree with its decision." *State v. Butler*, 315 Kan. 18, Syl. ¶ 1, 503 P.3d 239 (2022).

*Additional Facts About the Jury Instructions*

It is undisputed that the district court properly instructed the jury on the basic elements of the offenses charged. For second-degree reckless murder, the district court instructed the jury that the evidence needed to show that Richardson killed Taylor unintentionally "but recklessly under circumstances that show extreme indifference to the value of human life"; a defendant acts recklessly when he "consciously disregards a substantial and unjustifiable risk that certain circumstances exist or result of the defendant's actions will follow"; and the defendant's act of disregarding the risk "must be a gross deviation from the standard of care a reasonable person would use in the same situation."

The jury was also properly instructed that the lesser offense of involuntary manslaughter required proof that Richardson acted recklessly but did not need to show an extreme indifference to human life. For the alternative charge, the jury was also properly instructed on involuntary manslaughter while DUI and the lesser offenses.

*No Abuse of Discretion Shown in Admitting Richardson's prior DUIs*

Richardson contends that the district court failed to properly weigh the probative value of the defendant's prior criminal conduct against the risk that such evidence will

prejudice the defendant. See *State v. Boysaw*, 309 Kan. 526, 540, 439 P.3d 909 (2019). Our Supreme Court has outlined some nonexclusive factors that courts should consider in this analysis:

> "In evaluating the probative value of evidence of other crimes or civil wrongs, the district court should consider, among other factors: how clearly the prior act was proved; *how probative the evidence is of the material fact sought to be proved*; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence. In evaluating the possible prejudicial effect of evidence of other crimes or civil wrongs, the district court should consider, among other factors: *the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial*; and how time consuming it will be to prove the prior conduct." (Emphases added.) *Boysaw*, 309 Kan. at 541.

The district court applied these factors from *Boysaw* in analyzing this issue. Richardson concedes that the district court properly considered the first, third, and fourth factors in evaluating the probative value of his DUIs. He thus concedes that his prior DUI convictions were clearly proved; that a material fact—recklessness—was seriously disputed; and that the State had no other means of proving his DUI convictions in a less prejudicial manner.

Richardson challenges solely the second factor. He claims that the probative value of his prior DUI convictions to prove his recklessness state of mind was minimal because in today's society—nearly everyone knows that drinking and driving is risky behavior. Based on Richardson's view of the evidence, he was not drunk or impaired when the crash occurred since the evidence showed he had only "trace" amounts of alcohol in his system. He contends that the jury likely believed that since he had prior DUI convictions, he should not have driven after consuming *any* alcohol.

12

As the district court correctly noted, in *Doub*, this court found eight factors persuasive on the requisite state of mind in depraved heart second-degree murder cases. One of those factors included the defendant's prior record of intoxicated and/or reckless driving. 32 Kan. App. 2d at 1092. *Doub* explained that the relevance of the prior driving record is "'not to show a propensity to drive while drunk but "to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others."'" 32 Kan. App. 2d at 1092.

Similarly, in *State v. Claerhout*, 54 Kan. App. 2d 742, 750, 406 P.3d 380 (2017), this court held that such evidence has relevance "not only in examining the sufficiency of the evidence to find a defendant guilty of depraved heart second-degree murder, as in *Doub*, but also in examining the admissibility of 60-455 evidence." On review, our Supreme Court agreed and found that the defendant's prior driving record showed the defendant "was on notice that driving while intoxicated is risky behavior, and his decision to engage in that behavior demonstrated reckless conduct." *Claerhout*, 310 Kan. at 930. Those same considerations are present here.

We agree with the State that Richardson's prior DUIs had probative value in showing the element of recklessness—it tends to show Richardson's actual knowledge from his experience that driving while under the influence of alcohol or other controlled substances is dangerous to himself or others. And there is an evidentiary difference between arguing that a person should have constructive knowledge of a fact due to presumed public awareness of it and proving that a person has actual knowledge of it due to their own experience. That difference matters when one party has the burden to show an element beyond a reasonable doubt. The prior DUIs thus had substantial probative value in proving the disputed fact of Richardson's recklessness.

As for the prejudicial effect, Richardson merely recites *Boysaw*'s factors for prejudice—that admission of his prior DUIs made it likely that such evidence contributed

13

to an improperly based jury verdict and distracted the jury from the central issues of the trial. *Boysaw*, 309 Kan. at 541. But Richardson offers no facts or authorities to support these conclusions. Mere recitation of these factors fails to show that "the risk of undue prejudice substantially outweighs the evidence's probative value." *Brazzle*, 311 Kan. at 759.

Although the district court did not analyze all the stated factors in determining prejudice, an implicit determination by a district court that the probative value of K.S.A. 60-455 evidence outweighs the risk of undue prejudice is not reversible error when the court states that it has reviewed other caselaw for guidance in carrying out such a weighing procedure. *Claerhout*, 310 Kan. at 931. The district court did so here, citing the *Boysaw* factors, and how they were applied in similar cases—*Doub* and *Claerhout*—to prove recklessness.

The court also gave a limiting instruction, which provided:

"Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of determining whether the defendant acted with extreme indifference to the value of human life as alleged in the charge of murder in the second degree."

Although we commonly address limiting instructions when analyzing harmless error, they also relate to our prejudice inquiry. A limiting instruction is "a prophylactic to guard against the danger that the jury will view K.S.A. 60-455 evidence as tending to show propensity." *Claerhout*, 310 Kan. at 932. The limiting instruction thus provided some protection against the harm of which the defendant complains. 310 Kan. at 932. So too here. The limiting instruction lessens the chance that a defendant will be unduly prejudiced by evidence of other crimes.

14

Although Richardson disputed that he was intoxicated, some evidence showed the contrary. But even assuming that Richardson had only "trace" amounts of PCP, cocaine, and alcohol in his system, a reasonable person could still agree that the prior crimes evidence was not more prejudicial than probative. "All evidence that is derogatory to the defendant is by its nature prejudicial to the defendant's claim of not guilty. Evidence that actually or probably brings about a wrong result under the circumstances of the case is 'unduly prejudicial.'" *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997).

Richardson ignores the jury verdict in suggesting that admission of his prior DUIs probably brought about a wrong result. The district court instructed the jury on the alternative offenses of reckless second-degree murder and involuntary manslaughter while DUI, and the lesser included offenses of involuntary manslaughter and simple DUI. The jury found Richardson guilty of reckless second-degree murder and driving while suspended but acquitted him of involuntary manslaughter while DUI, and of simple DUI. But had the jury been improperly swayed by admission of Richardson's prior DUIs, it likely would have convicted him of simple DUI or involuntary manslaughter while DUI.

The district court weighed the evidence's probative value against its potential for undue prejudice before allowing its admission at trial, using the proper factors. This court does not reweigh evidence on appeal. See *State v. Belt*, 305 Kan. 381, 404, 381 P.3d 473 (2016). We cannot say that no reasonable person would agree with the district court's conclusion. See *State v. Goens*, 317 Kan. 616, 620-21, 535 P.3d 1116 (2023). Richardson thus fails to show that the district court abused its discretion by admitting evidence of his prior DUIs at trial.

*No Abuse of Discretion by Incorporating the Stipulation into the Instructions*

Richardson separately argues that the district court erred by including the stipulation to his prior DUI convictions in the jury instructions. Typically, when a party

15

alleges instructional error, we review the instruction for factual and legal appropriateness. See *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025). But Richardson does not frame the issue this way and thus waives or abandons that claim. See *State v. Davidson*, 315 Kan. 725, 728, 510 P.3d 701 (2022) (A party waives or abandons arguments not made on appeal.).

Instead, Richardson simply asserts that including the stipulation in an instruction was unnecessary, citing Kansas Pattern Instruction PIK Crim. 4th 51.020. The notes on use for that instruction suggest that a stipulation instruction "is usually unnecessary, although it may be given if the trial court finds it helpful to the jury." PIK Crim. 4th 51.020 (2024 Supp.), Notes on Use. Richardson claims that the instruction was not helpful to the jury because the stipulation did not prove any element of the offense. He also contends that because the stipulation was the only evidentiary stipulation in the jury instructions, this improperly emphasized his prior DUIs.

Still, Richardson shows no legal or factual error by the district court's exercise of its discretion to include the stipulation in the jury instructions. True, PIK Crim. 4th 51.020 suggests that instructions on stipulations are generally unnecessary. Yet it permits their use when, as here, a district court "finds it helpful to the jury." PIK Crim. 4th 51.020. That Richardson disagrees with the district court's assessment does not show reversible error.

We are somewhat more concerned with Richardson's contention that the district court overemphasized one piece of evidence by including it, and no other evidence, in the jury instructions. Although we may have chosen not to include Richardson's prior DUIs in a jury instruction, stipulations are commonly included in jury instructions, and we cannot say that no reasonable district court would have done so here. "Where reasonable minds can differ, discretion has not been abused." *State v. Broyles*, 272 Kan. 823, 841, 36 P.3d 259 (2001).

16

Because we find no abuse of discretion by the district court on this issue, we need not address the State's harmless error argument.

II.     *Did the district court err by denying Richardson's motion to dismiss the murder charge or suppress evidence after law enforcement allegedly destroyed exculpatory evidence in bad faith?*

Next, Richardson challenges the district court's denial of his motion to dismiss the reckless murder charge or suppress the vehicle autopsy evidence. As he argued to the district court, Richardson asserts that law enforcement prevented him from examining his truck for exculpatory evidence to support his theory of defense—mechanical failure—thus denying him due process. He also claims that law enforcement knew the truck was essential to his defense and acted in bad faith by releasing the police hold immediately after police completed their inspection of the truck. Accordingly, Richardson asks us to reverse the denial of his motion to dismiss and vacate his conviction for reckless second-degree murder. Alternatively, Richardson asks us to remand for a new trial and direct the district court to suppress the State's evidence that no mechanical failure caused or contributed to the crash.

*Standard of Review and Basic Legal Principles*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires fundamental fairness. *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). This fairness includes a criminal defendant's right to have a meaningful opportunity to present a complete defense. *State v. Pichon*, 15 Kan. App. 2d 527, 530, 811 P.2d 517 (1991). Fundamental fairness thus requires the State to deliver to the accused any exculpatory evidence in its possession. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State v. Carmichael*, 240 Kan. 149, 152-53, 727 P.2d 918 (1986).

17

The Due Process Clause, fundamental fairness, and *Brady* do not impose an absolute duty on law enforcement to preserve all material that might contain evidentiary significance in any given case. See *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Nor does the Due Process Clause require law enforcement to use any particular investigatory tool. 488 U.S. at 58-59. The duty of the government to preserve evidence under the Constitution is limited to evidence expected to play a significant role in the defendant's case. *Trombetta*, 467 U.S. at 488.

The standard of review on appeal from a trial court's denial of a motion to dismiss criminal charges depends on the grounds on which the defendant sought the dismissal. *State v. Garcia*, 282 Kan. 252, 259, 144 P.3d 684 (2006). Richardson alleged in his motion to dismiss that before trial, the State failed to preserve potentially useful evidence. The standard of review of a trial court's ruling on this issue is well established:

> "In cases where the State fails to preserve potentially useful evidence, there is no due process violation unless the defendant shows bad faith on the part of the State. The determination of the question of bad faith turns on the officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed, and the question of bad faith is a question of fact. Accordingly, the district court's factual findings regarding the presence or absence of bad faith are reviewed under a substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review." *State v. Lewis*, 301 Kan. 349, Syl. ¶ 6, 344 P.3d 928 (2015).

Richardson thus had the burden to show that the State or law enforcement acted in bad faith. *State v. Johnson*, 297 Kan. 210, 217-18, 301 P.3d 287 (2013); see also *Youngblood*, 488 U.S. at 58. This is a factual finding, so we review the record for substantial competent evidence supporting the district court's finding of no bad faith. See *Johnson*, 297 Kan. at 218. Substantial competent evidence is legal and relevant evidence that a reasonable person might regard as sufficient to support a conclusion. *State v. Rinke*, 313 Kan. 888, 892, 491 P.3d 1260 (2021).

18

*Additional Facts*

As explained, the district court held an evidentiary hearing on Richardson's motion. Richardson appeared at the hearing pro se. The district court assigned backup counsel and informed Richardson that he could elect to have counsel take over at any time. Richardson did not do this and instead presented his arguments and cross-examined the State's witnesses himself.

Davis testified that he interviewed Richardson at the hospital a few days after the accident to get Richardson's account of the events. During that conversation, Richardson claimed that he heard a pop and then suddenly lost control of his steering and brakes, suggesting that the crash was potentially caused by a mechanical issue.

Davis testified that when he left the hospital, he did not consider Richardson a criminal suspect. Still, he went to Dale's Tow to "look at the vehicle." When he arrived, he saw that Richardson's truck was being stored outside, under a tarp. He wanted to find indoor storage to better protect the vehicle so he contacted the police department's crime lab. Yet the director denied his request to store the truck there. Davis then contacted Dale's Tow, who agreed to store the vehicle indoors at another lot it owned. The truck was thus transported from Lenexa to Olathe.

Canaan applied for a search warrant to have Clark perform the vehicle autopsy, which was executed on September 7, 2016. Davis testified that the purpose of the autopsy was to investigate Richardson's claim that he heard a pop before the crash and lost control. Contrary to this account, Clark found no evidence of a malfunction that could have contributed to the crash. Given this, Davis decided to criminally investigate Richardson.

The day after Clark completed the vehicle autopsy, Davis determined that the police hold was no longer needed. Because the search warrant had been executed, he no longer needed the vehicle as evidence. Davis called Dale's Tow to pick the vehicle up and told the company that the truck could be released to the registered owner. After the release to Dale's Tow, Davis also called Dean and told him that "he could contact Dale's Tow and his insurance company."

Davis also admitted that he knew from his conversations with Dean that Dean had sold the truck to Richardson. But, Dean, Richardson's cousin, also told him that Richardson had not "completely paid for the vehicle," so it remained registered in Dean's name. Richardson asked Davis if he or anyone else ever told Dean that after the vehicle's release to Dale's Tow, Dean "could pick the vehicle up." Davis responded that Dale's Tow "would do that. They would send him a letter if he didn't contact them." Davis did not state that he told Dean the "vehicle was being released." Still, he did tell Dean that "his vehicle was at Dale's Tow . . . [and] that he should contact them and his insurance company."

This was the first vehicle autopsy that Davis was involved in. But Davis testified that in similar investigations involving towed vehicles, he had followed the same procedure in releasing the vehicle to the registered owner. And he had released the hold on the truck according to "the policies and procedures of the Mission Police Department."

Richardson asserted that after the release to Dale's Tow, the truck had been sold at auction and later destroyed. In his motion, Richardson explained that defense counsel tried to obtain a second opinion about the truck's mechanics but learned that Dale's Tow had sold the truck at auction on November 5, 2016, and it was crushed on February 28, 2017. This case did not go to trial until October 2023.

Richardson admitted that Clark had taken several pictures of the vehicle autopsy, but he argued that they were insufficient to allow an independent inspection, noting the lack of any video recordings.

In arguing that law enforcement had acted in bad faith by releasing the vehicle, Richardson asked the district court to consider five factors identified by the Tenth Circuit Court of Appeals:

- whether law enforcement knew that the evidence was potentially exculpatory;
- whether objective, independent proof supported that the evidence was potentially exculpatory;
- whether law enforcement had possession of or the ability to control the disposition of the evidence;
- whether the destroyed evidence was central to the State's case; and
- whether law enforcement offered an innocent explanation for the failure to preserve the evidence.

See *United States v. Beckstead*, 500 F.3d 1154, 1159-61 (10th Cir. 2007). Richardson argued that each factor weighed in his favor, showing that law enforcement had destroyed the truck in bad faith.

The district court did not reference or expressly apply these factors, but relied on more precedential cases in denying Richardson's motion based on his failure to show bad faith:

"Mr. Richardson has cited *Arizona vs. Youngblood* as being the seminal case in the area on the preservation of evidentiary material. There [are] also two Kansas cases, *State vs. Lamae* and *State vs. Finley* which I think are different fact patterns, but I think

21

that all three cases stand for the same proposition . . . that without a finding of bad faith, that the Court cannot grant the defendant's motion to dismiss.

"Based upon all of the evidence I heard today, my review of all of the motions and all of the responses and the preliminary hearing transcript, the Court does not find any bad faith on behalf of law enforcement in this case, and the defendant's motion to dismiss will be denied."

*Sufficient Support for the District Court's Finding*

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58; see also *Snow v. Sirmons*, 474 F.3d 693, 716 (10th Cir. 2007).

"[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

*Youngblood* distinguished this kind of case from Due Process cases governed by *Brady.* Under *Brady*, the good or bad faith of the State is irrelevant when the State fails to disclose material exculpatory evidence to the defendant. 373 U.S. at 87. *Youngblood* found that "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Kansas has adopted the ruling and reasoning of *Youngblood*. See, e.g., *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 (2005); *State v. Finley*, 273 Kan. 237, 240-41, 42 P.3d 723 (2002); *State v. LaMae*, 268 Kan. 544, 550, 998 P.2d 106 (2000); *Taylor v. State*, 251 Kan. 272, 278, 834 P.2d 1325 (1992). The

district court thus properly required Richardson to show bad faith on the part of the police.

Richardson does not challenge this controlling law but argues solely that the facts show bad faith here. We thus review the record to see if sufficient evidence supports the district court's finding that no bad faith was shown. See *State v. Morley*, 312 Kan. 702, 712, 479 P.3d 928 (2021) ("Substantial competent evidence does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact-finder's conclusion."). "Appellate courts do not consider other evidence that might support a different result so long as substantial competent evidence supports the district court's factual finding. Doing otherwise is an improper reweighing of evidence and reassessment of credibility." 312 Kan. at 713.

Richardson reported to Davis that he heard a pop before the crash, so he believed some type of mechanical malfunction likely caused the crash. Logically, Richardson's defense centered on information about the mechanical soundness of the truck. And the vehicle autopsy found the truck had some mechanical issues—although Clark concluded that he found no mechanical failure that would have contributed to the crash, he admitted that the truck's front tire and tie rod were damaged. It is uncontroverted that the evidence from the truck's autopsy was central to the State's case. The lack of mechanical failures that Clark found provided important evidence of Richardson's potential culpability and also tended to prove that Richardson drove recklessly.

Still, no evidence suggests that law enforcement acted in bad faith. The officers conducted a thorough examination of the vehicle. They took pictures throughout the inspection and compiled their observations in a report. Davis testified that the autopsy resulted in no evidence of a mechanical failure that would have contributed to the crash. And although the tie rod was broken, the nature of the break indicated to Clark that the damage happened during the crash and not before it. The presence or absence of bad faith

23

necessarily turns on the Government's knowledge of the evidence's potentially exculpatory value. See *Youngblood*, 488 U.S. at 56. Yet Richardson fails to show that the government had any knowledge of the truck's potentially exculpatory value at the time the evidence was destroyed. *Finley*, 273 Kan. at 241; *LaMae*, 268 Kan. at 551.

And Davis' testimony established that the release of the hold on the truck was done according to the police department's standard policy. Generally, compliance with departmental procedures shows that the disposal of evidence was not done in bad faith. See *LaMae*, 268 Kan. at 551; cf. *Finley*, 273 Kan. at 241-42 (noting that the evidence, which had been photographed and videotaped, was at the defendant's disposal to use for his case, and it was also available to the State to bolster its case). Courts have rejected similar bad faith claims when government actors destroyed potentially exculpatory evidence using standard policy. See, e.g., *Illinois v. Fisher*, 540 U.S. 544, 547-49, 124 S. Ct. 1200, 157 L. Ed. 2d 1060 (2004) (rejecting due process claim where government, acting in good faith and using "normal police procedures," destroyed cocaine seized during traffic stop ten years earlier); *United States v. LaVallee*, 439 F.3d 670, 697, 699 (10th Cir. 2006) (rejecting due process claim where Bureau of Prisons destroyed videotape two years after it was created, in accordance with the Bureau's policy, and nothing indicated that the Bureau was acting in bad faith when it did so).

Bad faith is reserved for "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58. In other words, law enforcement's conduct must reveal some intent to wrongfully withhold constitutionally material evidence from the defendant. 488 U.S. at 58. Yet nothing in the facts suggests that law enforcement thought that Richardson's truck potentially had any exculpatory value. We thus find substantial competent evidence for the district court's finding that Richardson failed to meet his burden to show that law enforcement acted in bad faith. See *Morley*, 312 Kan. at 713.

III.    *Did the district court violate due process by imposing a departure sentence based solely on nonstatutory aggravating factors?*

Finally, Richardson argues for the first time on appeal that his sentence is illegal because the district court relied solely on nonstatutory factors to increase his presumptive sentence. He challenges the constitutionality of K.S.A. 21-6815(c)(2)—the statute that lists aggravating factors that courts may consider for upward departures. That statute states that "the following nonexclusive list of aggravating factors may be considered in determining whether substantial and compelling reasons for departure exist . . . ." K.S.A. 21-6815(c)(2). The statute specifies that this is a "nonexclusive" list, so a court may consider other, nonstatutory factors. Richardson argues that by authorizing upward departures based on these nonstatutory and nonstated factors, the statute fails to give defendants fair notice of their conduct that may enhance their sentence and thus violates due process because it is facially unconstitutionally vague.

The State first asserts that this issue should be dismissed as unpreserved. If not dismissed, the State contends that Richardson's sentence is not illegal because longstanding authority establishes that nonstatutory factors can support a departure.

*Preservation*

The State correctly points out that although Richardson challenges his sentence as illegal, he argues constitutional error. Although this court may correct an illegal sentence at any time, constitutional challenges do not fit within the definition of an illegal sentence. See *State v. Johnson*, 317 Kan. 458, 464-65, 531 P.3d 1208 (2023); K.S.A. 22-3504.

We thus turn to the general rule that constitutional grounds for reversal asserted for the first time on appeal, as here, are not properly before the appellate court for review.

25

See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). But we recognize several exceptions to these general preservation rules, when

> "'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.' [Citations omitted.]" *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 (2022).

Richardson admits that his sentencing claim is unpreserved. Still, he asks us to review it under the first and second exceptions, above. But this court's review is prudential, so even if an exception may apply, we are not obligated to review the claim. See *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). We find Richardson's claim of an unconstitutional sentence is not preserved and we exercise our prudential authority to decline to address it for the first time on appeal. See *State v. Rios*, No. 124,604, 2023 WL 4038597, at *5-6 (Kan. App. 2023) (unpublished opinion) (refusing to review similar unpreserved constitutional claim challenging the use of nonstatutory aggravating factors to depart as violating due process); *State v. Larsen*, No. 122,660, 2022 WL 3017317, at *13 (Kan. App. 2022) (unpublished opinion) (declining to reach this very issue), *aff'd on other grounds*, 317 Kan. 552, 533 P.3d 302 (2023). We would benefit from the district court's analysis of this issue, and parties should ordinarily follow the normal course of litigation and raise all claims of unconstitutionality to the district court for its decision before raising them to this court.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I join with my colleagues in finding that the State did not violate Defendant Landunn D. Richardson's rights when it released the truck he was

driving during the fatal collision that resulted in his conviction for reckless second-degree murder in a jury trial in Johnson County District Court. The relevant evidence did not establish the State acted in bad faith—a necessary condition for such a claim. I likewise agree that we have properly exercised our prudential authority in declining to consider Richardson's challenge to the district court's use of nonstatutory factors for an upward durational sentence because he has raised the issue for the first time on appeal.

On the remaining issue, I would find that the district court erred in admitting for the jurors' consideration Richardson's convictions for driving under the influence in 2014 and 2015 as other crimes evidence relevant to his conduct in the 2016 collision and the resulting murder charge they were asked to decide. But the error was harmless given the properly admitted evidence. I, therefore, agree that Richardson gets no relief on this point and concur with my colleagues to that extent.

To prove Richardson guilty of reckless second-degree murder the State had to establish beyond a reasonable doubt that he killed a person "recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-5403(a)(2). To that end, the State sought to introduce Richardson's two DUI convictions under K.S.A. 60-455 to show that he knew driving while intoxicated entailed "risky" or dangerous behavior and, thus, displayed the requisite indifference to human life. The State offered the bare fact of his convictions—nothing more about the charges or their disposition.

A district court may admit evidence a defendant has committed other crimes to prove intent, among several statutorily enumerated illustrative purposes, but not to prove a propensity to engage in criminal behavior like the charged crime or generally. K.S.A. 60-455(a), (b); *State v. Hogan*, 321 Kan. 27, 40, 573 P.3d 207 (2025). Such evidence, however, can lead jurors astray, inducing them to consider the other crimes as proving propensity, to convict the defendant more as a scofflaw than as guilty of the charged

27

crimes, or to diminish the credibility of the defense's evidence. *Hogan*, 321 Kan. at 41; *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006).

To guard against the dangers attendant to improperly admitted other crimes evidence, a district court must make a pretrial review of any request to offer such evidence. See K.S.A. 60-455(e). The district court first must find the evidence to be relevant, meaning it bears on a disputed material fact (materiality) and makes that fact either more likely or less likely true (probativeness). We review materiality without deference to the district court and probativeness for abuse of judicial discretion. If the evidence is relevant, the district court must then determine whether its probative value outweighs any unduly prejudicial impact it might have on the jury. We review that decision for abuse of discretion. *Hogan*, 321 Kan. at 41-43. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *State v. Rayton*, 321 Kan. 677, 686, 583 P.3d 898 (2026); *State v. Shields*, 315 Kan. 131, 142, 504 P.3d 1061 (2022). Finally, the district court typically should instruct the jurors on the limited reason or purpose for which they may consider the other crimes evidence. *State v. Ervin*, 320 Kan. 287, 294, 566 P.3d 481 (2025).[1]

[1] Under K.S.A. 60-455(d), the State may introduce evidence a defendant has committed acts of "sexual misconduct" to prove propensity or for any other purpose in the prosecution of various sex crimes. Even then, the other crimes evidence must be more probative than unduly prejudicial. *State v. Boysaw*, 309 Kan. 526, Syl. ¶ 7, 439 P.3d 909 (2019). The broad rule of admissibility in K.S.A. 60-455(d) does not apply here.

In a terse bench ruling, the district court granted the State's motion to admit Richardson's earlier DUI convictions because "knowledge of the risk" bore on the "recklessness" necessary to prove the second-degree murder charge. The district court did not elaborate on the nature of the risk. And without any explanation, the district court

also found the DUI convictions would be more probative than unduly prejudicial. On appeal, Richardson confines his challenge to disputing the district court's probative-prejudice determination, so the majority and I do likewise.

The essential question is what "risk" does a conviction for DUI impart to a defendant? Without something more—and there is nothing more here—it is the risk attendant to arrest, prosecution, conviction, and punishment. Under K.S.A. 8-1567, those consequences include a jail sentence and fine even for a first conviction. Those risks increase for recidivists. Many, if not most, defendants likely incur the expense of retaining a lawyer and may feel a measure of embarrassment and social opprobrium. But the fact of conviction does not in and of itself convey some enhanced sense of the danger or risk that driving drunk poses to the physical safety of the defendant or other drivers and their passengers. That risk, however, forms the legal predicate for the district court's ruling and the State's position on appeal for affirming that ruling.

In short, Richardson's past convictions had little or no probative value in establishing his manifest indifference to human life on the day of the fatal collision. The district court's ruling rests on the mistaken conclusion that they do. I am inclined to treat the mistake as a misunderstanding of the legal effect of the convictions, although it arguably could be a factual error. The pigeonholing doesn't really matter. Either way, the district court moved into abuse of discretion territory. Admitting the convictions at trial created a risk the jurors would consider them as propensity evidence or would view Richardson as a scofflaw who should have been punished more harshly for those offenses. The potential for undue prejudice outstripped the evidentiary worth of the convictions, given their lack of probative value. The district court, therefore, erred in admitting the convictions as evidence during the jury trial.

The district court cited *State v. Doub*, 32 Kan. App. 2d 1087, 1091-92, 95 P.3d 116 (2004), to support its conclusion. On appeal, the State relies on *State v. Claerhout*,

310 Kan. 924, 927-28, 453 P.3d 855 (2019), to rescue the admission of the DUI convictions. The majority finds both cases persuasive. But neither offers much direct support for the essential proposition necessary to uphold the district court's ruling.

In *Doub*, we held that evidence showing John P. Doub, III, consumed alcohol and illegal drugs and committed a series of driving infractions in the hours leading up to a fatal collision supported his conviction for reckless second-degree murder. 32 Kan. App. 2d at 1094. The State introduced evidence of his repeated use of intoxicants and his collision with two parked cars in the two to three hours before the crash that left a nine-year-old girl dead to show his manifest indifference to human life in continuing to drive under the circumstances. The issue on appeal was the sufficiency of the evidence and not the admissibility of Doub's conduct. The State did not offer evidence that Doub had earlier convictions for DUI or other crimes.

In reviewing what evidence would properly support a finding of manifest indifference to human life in a fatal motor vehicle collision—an issue apparently of first impression in Kansas—the court relied, in part, on a law review article surveying the use of such evidence in other jurisdictions. 32 Kan. App. 2d 1091-92 (citing Luria, *Death on the Highway: Reckless Driving as Murder*, 67 Or. L. Rev. 799, 823 [1988]). The opinion quotes eight enumerated factors the article found to be commonly persuasive of the requisite bad intent or culpable mental state. Seven of them deal with circumstances occurring during or close in time to the collision giving rise to the murder charge. The eighth factor is the defendant's record of convictions for reckless driving or driving under the influence as bearing on an awareness of the risks that behavior poses to other motorists. After listing the factors, the *Doub* court generically observed their "[a]pplication . . . seems appropriate to determine whether evidence in a particular case meets the requisite state of mind." 32 Kan. App. 2d at 1092. The court did not otherwise mention other crimes evidence, let alone discuss its admissibility under the framework

30

governing K.S.A. 60-455. So *Doub*, at best, offers vague, unstudied dicta on the question before us.

In *Claerhout*, the court upheld the admission of Jeremy Claerhout's diversion agreement for a DUI that required him to attend a class on the dangers of driving while impaired to prove the extreme recklessness necessary to support a reckless second-degree murder conviction based on a fatal motor vehicle collision. 310 Kan. at 929-30. The court acknowledged a division of authority from other jurisdictions on whether a DUI conviction alone would be admissible for that purpose. Some appear to allow such evidence; others require the earlier incident to have involved a collision causing property damage or personal injury or to have resulted in a conviction requiring the defendant to take a class on the risks of driving under the influence. 310 Kan. at 928-29.

The *Claerhout* opinion does not include the language from the diversion agreement requiring participation in the educational program. But the court suggests one could reasonably infer Claerhout understood the purpose was to underscore the physical danger driving under the influence poses. 310 Kan. at 929-30. In turn, the agreement was relevant to show Claerhout's recklessness in driving while highly intoxicated leading to the fatal collision. The court does not squarely come down in one camp or the other on the admissibility of a DUI conviction alone as relevant evidence of extreme indifference to human life supporting a murder charge for a motor vehicle collision.

The *Claerhout* court does quote *United States v. Tan*, 254 F.3d 1204, 1210 (10th Cir. 2001), to the effect that a DUI conviction alone is relevant evidence of the risk driving drunk poses to the safety of motorists. *Claerhout*, 310 Kan. 928-29. And *Tan*, in turn, quotes *People v. Brogna*, 202 Cal. App. 3d 700, 709, 248 Cal. Rptr. 761 (1988), as if it supports that proposition. But *Brogna* does not; it is prototypical authority for the opposing proposition—requiring something more than a bare DUI conviction.

31

In *Brogna*, the trial court admitted the defendant's two convictions for DUI along with evidence that he was required to attend "various drinking driver['s] education programs" to support the element of "implied malice" necessary to prove a murder charge based on a fatal motor vehicle mishap. 202 Cal. App. 3d at 705-06. The appellate court found that evidence to be relevant and more probative than prejudicial. The court summarized its reasoning this way: "[E]vidence that a defendant has suffered a prior conviction and participated, as a condition of probation, in some form of alcohol education program which emphasized the dangers of driving while intoxicated is relevant to prove the accused's awareness of the life threatening risks caused by his conduct." 202 Cal. App. 3d at 709. That analysis never made its way into *Tan*. In *Claerhout*, the court cited two other cases of a kind with *Brogna*. 310 Kan. at 929.[2]

[2] In *State v. St. Clair*, the Hawaii Supreme Court affirmed a trial court ruling admitting one of the defendant's past DUI convictions because it involved a collision with another vehicle and was thus relevant to show the danger drunk driving posed to the physical safety of other drivers. And, in turn, the conviction supported the requisite disregard necessary to prove manslaughter based on the defendant again driving drunk and causing a fatal traffic crash. 101 Haw. 280, 283-84, 288-89, 67 P.3d 779 (2003). The trial court excluded evidence of a second DUI conviction because it did not result in personal injury or property damage. 101 Haw. at 284. In *Commonwealth v. Diehl*, a Pennsylvania appellate court upheld the admission of the defendant's past in-state DUI conviction and the attendant education program he was required to attend to show malice and recklessness in a prosecution for homicide when he fatally struck a pedestrian while driving drunk. The trial court excluded the defendant's out-of-state DUI conviction that apparently did not include a mandatory educational component. 140 A.3d 34, 40, 43 (Pa. Super. Ct. 2016).

I have not independently surveyed authority from other jurisdictions on the admissibility of past DUI convictions to prove malice or some other heightened indifference to human life in a criminal prosecution for a vehicular homicide. I make no assumption and offer no suggestion on whether such a survey would reveal a clear majority view.

On this score, *Tan* does not directly address the precise evidentiary issue we decide in this case—probative value measured against undue prejudice. Applying the

federal equivalent of K.S.A. 60-455, the court held the defendant's DUI convictions were relevant to show his knowledge that driving drunk posed a physical danger to others on the road. *Tan*, 254 F.3d at 1210-11. And the court relied (mistakenly) on *Brogna* in articulating its holding. I, of course, have questioned the soundness of *Tan*'s evidentiary conclusion. In that case, the government brought an interlocutory appeal of the district court's ruling excluding the DUI convictions as trial evidence. On appeal, the court declined to consider whether the DUI convictions would be more probative than unduly prejudicial and remanded the case to the district court to resolve that issue. The court did, however, forecast how the district court might proceed in weighing probativeness and undue prejudice. 254 F.3d at 1211-12.

In short, *Claerhout* tilts toward the inscrutable on the question before us, although it arguably leans at least ever so slightly toward requiring a DUI conviction plus something more to admit that conviction as evidence of the indifference to human life necessary to prove a reckless second-degree murder charge.

The district court's mistake in admitting Richardson's DUI convictions as evidence at the trial may be reviewed for harmless error. In *Hogan*, the court treated the improper admission of other crimes evidence as a nonconstitutional trial error requiring reversal if there were a reasonable probability the outcome would have been different absent the mistake. 321 Kan. at 48. As the party benefiting from the error, the State bears the burden of showing harmlessness. 321 Kan. at 48. Richardson acknowledges that standard applies here.

In this case, the principal harm stems from the jurors treating the past DUI convictions as propensity evidence suggesting Richardson was impaired at the time of the fatal collision. The two DUI convictions certainly show Richardson would sometimes drive under the influence, but they do not offer particularly strong evidence he was likely to do so on any given occasion. Conversely, the jurors heard other evidence that did

33

pointedly suggest Richardson to have been intoxicated at the time of the fatal collision. First, in an interview with an investigator about 10 months after the crash, Richardson said he had consumed no intoxicants the day of the crash, although he had told a first responder he had a beer at about noon that day. A blood test taken about an hour after the collision showed a blood-alcohol level of 0.031 and the presence of cocaine and PCP. Although the blood-alcohol level was below the legal limit, it contradicted Richardson's exculpatory representation. The presence of the illegal drugs standing alone was less compelling because they could have been in his system for as long as several days. But three days after the crash, Richardson told the same investigator he had not used any illegal drugs for at least 30 days.

Second, Richardson initially consented to an investigatory blood draw and then withdrew his consent. Medical personnel took Richardson's blood without his explicit permission as part of their treatment protocol rather than as part of the law enforcement investigation of the collision. Finally, as we have mentioned, Richardson's ex-wife told investigators that he had spent time with a drug buddy before the collision and sounded intoxicated in a telephone call with her between then and the crash. While she attempted to soften those statements at trial, the jurors could consider them. Richardson did not testify in his own defense, so he did not clarify or attempt to reconcile his varied pretrial statements for the jury.

That constellation of circumstances shows that Richardson actively sought to avoid providing evidence suggesting he may have been intoxicated—including a false representation about his consumption of alcohol. Jurors may weigh that sort of avoidance as evidence of a guilty mind. See *State v. Donahue*, 218 Kan. 351, 354, 543 P.2d 962 (1975) (false exculpatory statements admissible to show consciousness of guilt); *State v. Knight*, No. 124,198, 2023 WL 4144902, at *2 (Kan. App. 2023) (unpublished opinion) (A factfinder "may properly consider a defendant's resort to false explanations to be evidence of a guilty mind."). We have recognized that inference to be appropriate when

34

an intoxicated driver denies having been drinking or refuses tests that would indicate intoxication. See *State v. Alexander*, No. 114,729, 2016 WL 5344569, at *4 (Kan. App. 2016) (unpublished opinion) (driver's conflicting accounts of cause of collision indicative of intent to deflect attention from possible intoxication); *State v. Swingle*, No. 107,856, 2013 WL 4729565, at *4 (Kan. App. 2013) (unpublished opinion) (driver's denial of having consumed alcohol despite significant evidence to contrary properly considered as consciousness of guilt in DUI case); *Landram v. Kansas Dept. of Revenue*, No. 104,790, 2012 WL 924803, at *3 (Kan. App. 2012) (unpublished opinion) (driver's refusal to take field sobriety tests circumstantial evidence they believe they are intoxicated), at *7-8 (Atcheson, J., dissenting) (same).

More broadly, jurors may treat a defendant's prevarication on a material matter as indicative of their dissembling on other relevant matters. *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) (jurors "reasonably could conclude that had [defendant] been deliberately false in one claim, he may have been false in others"); *Beauclair v. State*, No. 123,671, 2022 WL 17546264, at *4 (Kan. App. 2022) (unpublished opinion) (noting maxim that "a witness false in one thing may be false in all things"); see also 89 C.J.S. Trial § 742 (stating maxim: "[I]f the jury believes that a witness's testimony on a material issue is intentionally deceitful, the jury may disregard all of that witness's testimony."). So the jurors had fair reason to reject other exculpatory aspects of Richardson's account of the collision, diminishing the relative evidentiary value of the DUI convictions.

On balance, the trial record contains sufficient admissible evidence supporting Richardson's intoxication and, in turn, his exceptionally reckless conduct. The jurors had no need to fall back on an improper inference of propensity drawn from his two previous DUI convictions. I entertain no reasonable probability Richardson would have been found not guilty had the convictions been excluded from the jurors' consideration. The error in admitting them was harmless.

35